IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTY M. WINCHESTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-04-1416 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary

Judgment (Document No. 11) and Plaintiff's Cross Motion for Summary Judgment (Document No.

16). Having considered the cross motions for summary judgment, the administrative record, and the

applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's

Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is

DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

**I.     Introduction**

Plaintiff, Betty M. Winchester ("Winchester"), brings this action pursuant to Section 205(g)

of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying her

application for disability insurance benefits and disability widow's benefits. Winchester claims that

the Administrative Law Judge's ("ALJ") decision is flawed because the ALJ: (1) failed to consider

Plaintiff's obesity when considering whether her impairments meet or are equivalent to the criteria of any listing, and when determining her residual functional capacity ("RFC") as required by Social Security Ruling 02-01p; (2) failed to comply with Social Security Ruling 96-8p in assessing her RFC; and (3) improperly rejected the opinion of her treating physician.  In contrast, the Commissioner contends that the ALJ properly considered the evidence of record and that substantial evidence supports the ALJ's decision denying a period of disability, disability insurance benefits, and widow's insurance benefits.

## II.      Administrative Proceedings

On February 8, 2002, Winchester filed for disability benefits claiming an inability to work since March 23, 2001, due to pain in her back, left leg, left ankle, and asthma.  (Tr. 12, 95, 123).  The Social Security Administration denied her initial application and her request for reconsideration.  (Tr. 58-68).  Subsequently, Winchester requested a hearing before an ALJ.  (Tr. 28).  This request was granted and Ward King, the ALJ in this case, held a hearing on July 1, 2003.  (Tr. 12, 20-23).  On December 10, 2003, the ALJ issued a decision finding that Winchester was not entitled to widow's insurance benefits, a period of disability, or disability insurance benefits.  (Tr. 12-18).

Winchester sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R.      §§ 404.970, 416.1470 (2005).  The Appeals Council determined, on February 21, 2004, that there was

no basis on which to grant Winchester's request for review.  (Tr. 4).  Thus, the ALJ's findings and decision became final.

Winchester has filed a timely appeal of the ALJ's decision. Both the Commissioner and Winchester have now filed Motions for Summary Judgment.  (Document Nos. 11 & 16).

## III.    Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2005).  The Act specifically grants the district court the power to enter judgment, upon the pleadings of the transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence.  *Id*.  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1998); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

3

The United States Supreme Court has defined "substantial evidence" as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).   The evidence must create more than "suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.   Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344.   The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The impairment must be proven through medically accepted clinical and laboratory  diagnostic techniques.   *Id*. § 423(d)(3).   The impairment must be so severe as to limit the claimant in the following manner:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

*Id*. § 423(d)(2)(A).   The mere presence of an impairment is not enough to establish that one is suffering from a disability.   Rather, a claimant is disabled only if he is "incapable of engaging in any

substantial gainful activity."   *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284,1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.    If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.    If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.    If the claimant is capable of preforming past relevant work, a finding of "not disabled" must be made; and

5.    If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Id.* at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123,125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614,618 (5th Cir. 1990).  If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett*, 67 F.3d at 564.

Here, the ALJ determined at step four of the five step sequential evaluation that Winchester was not disabled.  Specifically, the ALJ, determined that, although Winchester's medically determinable impairments constitute a severe combination of impairments, this combination did not

5

meet or equal the criteria of any listed impairment.  In addition, the ALJ determined that Winchester was able "to obtain, perform, and maintain the full range of light work, except she can only occasionally kneel and crouch" and was able to perform her past relevant work as a convenience store cashier. (Tr. 17).  In this appeal, the Court must determine whether substantial evidence supports the step four findings, whether the ALJ used the correct legal standards in arriving at his conclusions, and in particular, whether the ALJ properly considered Winchester's obesity in his decision.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

## V. Discussion

### A.  Objective Medical Facts

The medical record shows that Winchester seeks and receives chiropractic treatment for back pain, hip pain, and leg pain.  Winchester began chiropractic treatment with Dr. Wassenburg on May 26, 2000, for pain associated with a 1998 fall.  (Tr. 216, 226).  Winchester informed the chiropractor that her pain had increased in intensity during the two years subsequent to her fall and that she took Advil to treat the pain.  (Tr. 226, 228).

Dr. Wassenberg found that Winchester had a limited range of motion in her lumbar spine, palpable muscle spasms and facet edema around the L4-5-S1 joints. (Tr. 216, 221).  Dr. Wassenberg treated Winchester with chiropractics, including interferential treatments and an exercise regime

6

utilizing synergy cords, which, according to the treatment notes, helped to alleviate the pain she was experiencing in her back.  (Tr. 206, 211, 222).   However, the pain in her left knee, which Dr. Wassenberg had originally believed resulted from an altered gait due to her back pain, did not subside. (Tr. 208).  The chiropractor subsequently referred Winchester to an orthopedic surgeon, Dr. Power. (Tr. 206, 183).

On November 13, 2000, Dr. Power examined Winchester and reported that Winchester had a full range of motion in her left knee.  (Tr. 183).  The examination also showed that Winchester had popping and catching, tenderness without swelling, stable ligaments, and no crepitus in her left knee. (Tr. 183).  Dr. Power, based on the examination and x-rays, opined that Winchester's knee pain was unrelated to her back pain.  (Tr. 183).

Initial radiographs of her left knee had also indicated some mild degenerative arthritis.  (Tr. 184).  A subsequent MRI indicated a small tear of the medial meniscus.  (Tr. 175, 181).  Dr. Power recommended arthroscopic surgery on Winchester's left knee.  (Tr. 181).  Although Winchester was informed that the surgery might not relieve her back and leg pains, she decided to go ahead with the surgery.  (Tr. 181).  Three weeks after surgery, Winchester was doing well.  (Tr. 180).  Although Winchester had trouble kneeling and minimal puffiness around the knee, she had a full range of motion.  (Tr. 180).  Nine weeks after surgery, Winchester reported some tenderness and experienced pain only when climbing stairs.  (Tr. 179).  Dr. Power commented that she had recovered nicely from the surgery.  (Tr. 179).  Twelve weeks after surgery, Winchester reported problems kneeling, squatting, and sometimes moving up and down stairs.  (Tr. 178).  However, Dr. Power opined that further treatment was not needed.  (Tr. 178).

Dr. Wright, another chiropractor, provided a "whole person impairment" report, at Dr.

Wassenberg's request, on March 27, 2001.  (Tr. 188-195).  He placed Winchester's whole body impairment rating at 16 percent.  (Tr. 188, 189-192).  Winchester scored 5 percent impairment for a lumbar, soft tissue injury and 7 percent impairment for her lumbar range of motion.  (Tr. 193).  In addition, Dr. Wright assigned a 4 percent knee impairment due to her knee surgery.  (Tr. 192, 193). In his report, Dr. Wright indicated that Winchester reached maximum medical improvement on March 27, 2001.  (Tr. 188).

Winchester began seeing a different chiropractor, Dr. De Fiore, on August 23, 2001.  (Tr. 282).  She initially complained of pain in her lower back, which was present at all times, was affected by the weather, was worse while sitting, bending, walking, lifting, pushing, and pulling, which woke her up during the night, and which traveled down her left leg.  (Tr. 285).  The pain, she claimed, was accompanied by tingling and/or numbness in her left leg.  (Tr. 285).  Winchester also complained of a swollen ankle which she had sprained two weeks prior to her first appointment with Dr. De Fiore. (Tr. 281).  Dr. De Fiore had also detected palpable muscle spasms in the left lumbar region but otherwise, Winchester's exam was normal.  (Tr. 281).  The chiropractor initially classified her condition as minor.  (Tr. 282).

On February 22, 2002, Dr. De Fiore wrote that Winchester "is able to perform some type of work and that her injury of 2/10/98 does not cause her a total inability to work."  (Tr. 252).  He also noted that her range of motion and strength did not entirely incapacitate her.  (Tr. 252).  However, Dr. De Fiore noted that "[s]he experiences low back, hip, and leg pain and or numbness when standing or sitting for prolonged periods of time," "is not able to lift heavy weight,"and that she would only be able to work under appropriate conditions.  (Tr. 252).  Dr. De Fiore also referred Winchester to Dr. Castro, a medical doctor whom she saw on October 25, 2002, in order to get pain

8

medication.  (Tr. 299-300).  Winchester indicated in her "Claimant's Statement When Request for Hearing is Filed and the Issue is Disability" form that Dr. Castro prescribed (1) Cyclobenzaprine, which relieves muscle spasms without interfering with muscle function and is generally used as an adjunct with rest and physical therapy (Physicians' Desk Reference 1930 (59th ed. 2005)), and (2) Mobic, a non-steroid, anti-inflammatory drug generally used to relieve symptoms of osteoarthritis. (Tr. 149, 151; Physicians' Desk Reference at 1006).  Winchester continued to see Dr. De Fiore through January 3, 2003 for treatment of lower back pain, pain in her hip, and pain in her left leg. (Tr. 295, 296).

On May 31, 2002, Winchester was examined by Dr. Franklin, D.O.   (Tr. 232-234). Winchester described her pain as dull, tight, and achy and as running up and down her back, down her left hip, and down her left leg.  (Tr. 232).  The doctor also recorded that Winchester used Primatene, an over-the-counter nasal spray,  and took nine 500 mg Tylenol pills each day.  (Tr. 233). Dr. Franklin also had two radiographs taken of Winchester's left knee and five radiographs taken of her lumbar spine.  (Tr. 235-236).  The radiologist did not find any significant abnormalities in Winchester's left knee.  (Tr. 235).  However, he did discover some degenerative facet changes in the mid and lower lumbar region as well as some degenerative spurring in the mid lumbar spine.  (Tr. 236).  Dr. Franklin opined that Winchester's chronic, lower back pain resulted from lumbar strain, that her left knee pain resulted from her injury, that her left ankle was sprained, and that she suffered from asthma and obesity.  (Tr. 234).

As set forth above, the objective medical evidence supports the ALJ's decision at step four. Regarding Winchester's claim that the ALJ improperly ignored her obese condition, there is little objective medical evidence from the records of Winchester's treating physicians relating to her

obesity.  In fact, Winchester has neither been treated for her obesity nor has any one of her physicians, in the course of treating her other impairments, given deference to her obesity.  While the objective medical evidence shows that Winchester suffers from chronic, lower back pain, left knee pain, left ankle pain, as well as asthma and obesity, the evidence does not show that her obesity, or even the combination of all of her impairments, is sufficiently severe to preclude her from substantially gainful activity.

Winchester contends that the ALJ had a duty to investigate her obesity because he recognized it as an impairment.  However, the ALJ is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments."  Social Security Ruling 02-1p.  Further, the ALJ is instructed to evaluate the case solely on the information of record.  *Id.*  During the hearing, the ALJ ascertained that all relevant medical information had been submitted.  (Tr. 39).  The record lacks any objective evidence to show that Winchester's weight is a factor in her medical condition, that it  exacerbated her impairments, or that it created any functional limitations.  Winchester also claims that Social Security Ruling 96-6p requires the ALJ to obtain an updated medical opinion when finding that a claimant's impairments are not equivalent to another impairment in the listings.  However, this requirement is satisfied when a Disability Determination and Transmittal Form is signed by a State agency medical consultant (Social Security Ruling 96-6p) which, according to the record, was signed.  (Tr. 56, 57, 313.)

In sum, the objective medical evidence factor supports the ALJ's determination that Winchester has the residual functional capacity to perform her past work and is not disabled within the meaning of the Act.

### B.  Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight."  *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Furthermore, regardless of the opinions, diagnoses, and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

Even if an opinion of a treating physician is not entitled to controlling weight because it is not consistent with the other substantial evidence of the record and is not well supported by medically acceptable clinical and laboratory diagnostic techniques, the opinion nonetheless is still entitled to deference and must be weighed in light of the following factors:

(1) the physician's length of treatment of the claimant,

(2) the physician's frequency of examination,

(3) the nature and extent of the treatment relationship,

(4) the support of the physician's opinion afforded by the medical evidence of record,

(5) the consistency of the opinion with the record as a whole, and

(6) the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Here, the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinion of the medical sources. The ALJ wrote:

> I have carefully considered the opinions of one of Ms. Winchester's treating chiropractors, Dr. Stephen DeFiore, D.C., regarding the claimant's ability to work full-time. On February 22, 2002, Dr. DeFiore stated in a letter to the Texas Workers' Compensation Commission, "It is my opinion that Ms. Winchester is able to perform some type of work and that her injury of 2/10/98 does not cause her a total inability to work." (Exhibit 7F, p. 16). Dr. DeFiore further stated in the same letter, "Her ranges of motion and strength are reasonable and within a range that doesn't incapacitate her abilities." However, on December 19, 2002, Dr. DeFiore stated in a letter to a "Mrs. Murray" that since Ms. Winchester's injury in February of 1998, "Ms. Winchester has not been able to sustain a job, although she has tried, due to her ongoing condition." (Exhibit 9F, p. 3). However, this latter opinion from Dr. DeFiore to Mrs. Murray is directly contradictory to his prior opinion as expressed to the Texas Workers' Compensation Commission, and it is contradictory to his own treatment notes (*See* Exhibit 7F). For example, Dr. DeFiore noted in a treatment record dated January 3, 2003 the severity of Ms. Winchester's medical problem "minor," her gait was within normal limits, her posture was within normal limits, and her pain was "mild" (Exhibit 9F, p.2).
>
> Given the remaining credible evidence, I find Dr. DeFiore's opinion as to Ms. Winchester's inability to work unsupported by the remaining credible evidence or by his own treatment notes. Thus, I have not afforded controlling weight to his opinion that the claimant cannot work. However, I have considered all of his statements in conjunction with all of the evidence in reaching my conclusions (*See* 20 C.F.R.    § 404.1527; *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); Social Security Ruling 96-5p).

(Tr. 16). In this case, as determined by the ALJ, there is no expert medical opinion that Winchester is unable to engage in any substantial gainful activity. Winchester's treating physician, Dr. De Fiore, indicated in a letter that Winchester could only work at a job that did not require her to sit or stand for the duration of her work shift and that did not require her to lift heavy weight. (Tr. 252). However, in that same letter, Dr. De Fiore opined that Winchester is not completely incapacitated

and that she can work. (Tr. 252). In another letter, Dr. De Fiore indicated that Winchester had not been able to keep a job due to her condition. (Tr. 296). Although Dr. De Fiore treated Winchester forty-seven times from late August 2001 until early January 2003, the ALJ found the chiropractor's statements unconvincing and the doctor's opinion that Winchester could not work unworthy as a controlling opinion. (Tr. 16). The ALJ determined that Dr. De Fiore's opinion regarding her work limitations was inconsistent with his treatment records, when, as recently as January 1, 2003, the doctor had noted in Winchester's treatment record that her condition was minor and that her pain was mild. (Tr. 252). Even though Dr. De Fiore treated Winchester for a considerable period of time, his statements do not conform to his treatment record.

In addition, no other physician in the record has opined that Winchester is indeed disabled. This fact, in connection with Dr. De Fiore's apparent belief that Winchester's condition is minor, supports the ALJ's contention that Winchester was not disabled for purposes of the Social Security Administration. It is not the case that the ALJ did not give any deference whatsoever to Winchester's treating physician. Indeed, the ALJ considered all of the chiropractor's statements, together with all of the evidence, in reaching his conclusion. (Tr. 16). Hence, this second factor also weighs in favor of the Commissioner.

### C.  Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits

Reform Act of 1984.  42 U.S.C. § 423 (2005).  The statute provides that allegations of pain do not

constitute conclusive evidence of disability.  There must be objective medical evidence showing the

existence of a physical or mental impairment which could reasonably be expected to cause the pain.

Statements made by the individual or her physician as to the severity of the plaintiff's pain must be

reasonably consistent with the objective medical evidence of the record.  42 U.S.C. § 423.  "Pain

constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly

unresponsive to therapeutic treatment.'"  *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990)

(citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-

exertional impairment which can limit the range of jobs a claimant would otherwise be able to

perform.  *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings

to be deferential.  The evaluation concerning subjective symptoms is a task particularly within the

province of the ALJ, who has the opportunity to observe the claimant.  *Hames v. Heckler*, 707 F.2d

162, 166 (5th Cir. 1983).

Winchester testified at her hearing that she experiences painful muscle spasms in her lower

back.  (Tr. 44).  She also claimed that the pain radiates from her back to her left leg and as far down

as her ankle and that she treats it with a pain reliever and muscle relaxer.  (Tr. 45).  Winchester also

testified that standing for 15 minutes results in pain in her back, knee, and ankle and that after 30

minutes, she must sit down.  (Tr. 45).  She continued to testify that if sitting down did not relieve the

pain, she would lie down without elevating her legs because doing such increased the pressure on her

back.  (Tr. 45-46).  If the pain persisted, she would seek relief from a pain reliever or muscle relaxer.

(Tr. 46).  According to Winchester, she is able to cook and wash dishes but is only able to accomplish

these activities by alternately doing and resting.  (Tr. 46).  She is able to do her laundry although

14

putting her clothes in and taking her clothes out of the machines hurts her back. (Tr. 47). She further

testified that she can only walk half a block, sit for 30 minutes, and lift 15 pounds. (Tr. 47-48). It

was her testimony that if she carries or lifts more than this, she has muscle spasms and back pain. (Tr.

48).

The ALJ found that "Winchester has objectively identifiable, medically determinable

impairments that reasonably could be expected to produce the pain and other subjective complaints

she alleges." (Tr. 17). However, he also found that, in light of all of the evidence, Winchester's

allegations of pain and other subjective complaints were "not entirely credible." (Tr. 17). The ALJ

wrote:

> After carefully considering all the evidence, and specifically the above credibility
> factors, I find Ms. Winchester's allegation of a complete inability to work is not
> credible. While her allegations are credible in the sense that she is limited by her
> impairments, they are not credible to the extent she is disabled. The record as a whole
> supports my finding that Ms. Winchester's impairments are not as limiting as she
> alleges. She testified she cooks, washes dishes, and launders clothes, but she does not
> mop, and she has not grocery shopped since February 2003. She also testified she can
> stand for only 30 minutes, sit for only 30 minutes, walk for only half a block, and
> lift/carry only 10-15 pounds, but she cannot kneel on her left knee, and she had
> difficulty climbing stairs. In stark contrast, the State agency medical consultants
> determined (in June and October of 2002, respectively) the claimant was able to do
> the following: frequently lift and carry up to 25 pounds; occasionally lift and carry up
> to 50 pounds; stand or walk for about 6 hours in an 8-hour workday; and sit for about
> 6 hours in an 8-hour workday (Exhibit 8F).

(Tr. 15). Credibility determinations, such as that made by the ALJ in this case, are generally within

the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In

sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and

weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 484, 485 (5th Cir. 1985)).

Because the record shows that the ALJ did not rely on any inappropriate factors in making

his credibility decision, this factor also weighs in favor of the Commissioner.

### D.  Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history, and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a) (2005).  The ALJ in this case did not reach step five of the five step sequential evaluation.  Hence, for this case, the only concern is whether there is substantial evidence that Winchester could engage in her previous work.

The record shows that Winchester was fifty-eight years old, had an eighth grade education, and had past work experience as a cashier and as a store clerk at the time of her hearing before the ALJ.  (Tr. 40, 42-44).  The ALJ determined that Winchester has a RFC sufficient to perform light work.  (Tr. 16).  In finding this, the ALJ determined both that Winchester's testimony regarding her inability to work was not completely credible and that Dr. De Fiore's opinion pertaining to Winchester's ability to work was not supported by credible evidence and thus, could not be given controlling weight.  (Tr. 16).  On the other hand, Winchester's orthopedic surgeon, Dr. Power, had released Winchester to return to her normal work duties following her surgery yet observing that she did have difficulty kneeling or squatting.  (Tr. 178-180).  Moreover, the disability physician, who reviewed Winchester's records, determined that Winchester could lift up to fifty pounds occasionally, lift and carry up to twenty-five pounds frequently, stand or sit for six hours in an eight hour work day, and is unlimited in her capacity to push and pull.  (Tr. 287).

The ALJ determined that Winchester retained the RFC to do light work.  Further, he defined light work to include lifting no more than twenty pounds, frequently lifting up to ten pounds, and alternately standing or sitting for six hours in a work day.  20 C.F.R. § 404.1567(b) (2005); Social Security Ruling 83-10.  In Winchester's Disability Report, she indicated that during her employment from October 1990 to April 1994, she stood for eight hours, sat for eight hours, occasionally lifted fifty pounds and frequently lifted less than ten pounds.  (Tr. 124).  Furthermore, while Winchester indicates in her work history that she generally lifted ten pounds or less, stood for eight hours, and sat for eight hours while employed, she reports that she frequently lifted fifty pounds while working during the period December 1996 to June 1999.  (Tr. 132-138).

Though Winchester claims the ALJ erred in not consulting a vocational expert while determining her RFC, there appears to be little reason for such testimony in this case.  There is substantial evidence in the record that the duties Winchester had been required to perform, and that she has performed, in recent employment are within her personal limitations as found by the ALJ.  Hence, the ALJ's decision that Winchester can do light work is supported by substantial evidence and his findings comport with Social Security Ruling 82-62 concerning her past relevant work.

VI.    **Conclusion**

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts.  *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982).  As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED, Plaintiff's cross Motion for Summary Judgment (Document No. 16) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 20th day of July, 2005.

Frances H. Stacy
United States Magistrate Judge

18